The next case is Moms for Liberty v. Brevard County Public Schools. Alan Gora is here for the appellants. Jennifer Bridges is here for the appellees. And once you're situated there, Ms. Gora, you may begin. Mr. Gora, I'm sorry. Good morning, Your Honor. I'm here for the appellant. First Amendment cases often cause discomfort because the amendment is designed to make us accept things that we might rather not accept. It's true that nobody likes to be the subject of what they perceive to be personally directed or abusive speech. And many people do sincerely find vulgar or sexually explicit language to be upset. But when people enter a limited public forum, such as a school board meeting, as members of the audience or as government officials, they need to get ready to hear speech that isn't nice or pleasant or perfectly agreeable. Now, school boards can enforce all kinds of regulations governing public speech at their meetings. So, for example, we do not challenge in this case the defendant's rule that requires speakers to, quote, observe reasonable decorum. But as the Sixth Circuit held in Eisen, the terms abusive and personally directed reference viewpoints. Barring such speech violates the First Amendment on its face by codifying viewpoint discrimination. Eisen is consistent with well-established First Amendment doctrine as set forth in the Supreme Court's precedents and the precedent of this court. It should be followed. Similarly, while school officials are welcome to prohibit actual obscenity at their meetings, an obscenity ban cannot allow the censorship of whatever school officials believe to be, in their word, unclean. Obscenity, as the Supreme Court understands the term, is not protected speech. But Brevard School's idiosyncratic understanding of obscenity cannot be allowed to bar parents from reading aloud school library books that, whatever their suitability for children, do not fail the Miller test. The First Amendment stands for the proposition that we Americans cannot silence each other by taking offense to speech. As a constitutional matter, we have agreed to disagree. Well, we're looking at the policy here, the Brevard County School Board policy. And all that it requires is that the comments during the school board meetings in this limited public forum, that they have to be directed to the chair, and the chair can interrupt, warn, or terminate if there's abusive, obscene, or personally directed statements. Why aren't we bound by our prior decision in Roe v. The City of Cocoa that there's a significant governmental interest in conducting orderly, efficient meetings of public bodies? Well, Your Honor, Roe is good law, and the Court is bound by it. But Roe does not speak to the types of restrictions we have here at issue. In Roe, this Court upheld the City's power to restrict City Council meeting participation to its residents. Which has nothing to do with viewpoint discrimination. And many school boards across the country do require that public speakers be members of the school district or taxpayers of the school district. There's nothing about the policy that says you're limited to a specific subject, or you're prohibited from going into a different subject matter. Okay. Is that correct about this policy? There's nothing about that policy that... There's a difference between the words of the policy and the defendant's brief and their actual behavior. The defendants could be more restrictive than they actually are. It's a limited public forum, so they can say, tonight we're only speaking about the following agenda items, for example. And the policy does say at the beginning that the point of having public participation at board meetings is to allow members of the public to express themselves on school matters of community interest. And so we would not contest the idea that a school board meeting has to relate to school topics. All the speech at issue here, whatever else we think about it, happens to have been on school topics. There is a restriction that the board has that allows the board to deny speech that is irrelevant. And irrelevant usually speaks to the idea that speech is off topic. If somebody went to a school board meeting and talked about UFOs or a football game or something else, they can be told, listen, we're here to talk about the school. Talk about something else. So the policy... I mean, it's hard for me to believe that parents at a school board meeting can, without any regulation by the chair, permit profanity or racial slurs. Are they permitted to do that at a school board meeting as a policy? Your Honor, context matters. And regardless of whether the policy permits or forbids it, the question is what the First Amendment requires a school board to tolerate. So I think that there are instances whereby racial epithets or obscene words could be restricted, but the context matters. So, for example, if a person were to get up before the school board, as was the case, I believe, in the dire opinion that's relied on by the defendants, and simply spews invective and is not really advancing a conversation that's related to the purposes of the school board, then at that point the person could be asked to leave. Not as the purpose of the policy to begin with? That's right. And so obscenity sometimes can be off topic. However, look at the example in this case. We had a woman who read a passage from a book that had a four-letter word in it. The book was a book in the school library. She was there to protest the fact that this book is included there. She has the First Amendment right to read from the book, even if it includes words that she may not like. And so what did the chair do? The chair told her to stop her speech because it was unclean in the chair's words. And then what happened? She went on reading, right? She was permitted to finish her remarks. She did finish her remarks, but she did not keep reading. But she said, I made my point. She got into a conversation about how the very fact that the speech was objectionable was her point. But that's very different than someone coming out and just spewing four-letter words because they enjoy hearing themselves say that. How are the rules not viewpoint neutral? The rules are not viewpoint neutral because abusive speech is a viewpoint, and personally directed speech is a viewpoint. If someone comes and discusses a school board member and says, you know, this is the world's greatest school board member, laudatory speech, that's not abusive. But if someone says, you know, you're a terrible school board member and you should resign and quit or be impeached, recalled, somebody might say, hey, you're being abusive. And abusive is a very vague term. It means whatever the enforcer thinks it means. We got called out in the defendant's brief for allegedly cherry-picking facts, but the cherry-picking here is being done by the school board chair who picks the sour cherries, so to speak, of language that they don't like and says, oh, this is abusive. Only two times were members of the Moms for Liberty interrupted out of, let's see, 109 times that 34 members of the Moms for Liberty spoke. Only two times were they interrupted and then allowed to finish. That's reflected in this record, right? The record also shows, Your Honor, that there are many other people who have been interrupted, and the moms are out there in the audience watching what's happening to other people. So, for example, this character who calls himself Thomas Jefferson, who was repeatedly interrupted when he said that a certain policy was evil, and he was told you can't say that there's an evil policy. When people observe others in the audience being mistreated, having their speech curtailed, that impacts how they structure their speech. So we do have in the record evidence that clients have declared that their expression has been curtailed and modified. They have modified their words so that they don't run afoul of these rules. Counsel, let me ask you something. You've made much in your opening remarks here today about the application of Tam and Brunetti by the Sixth Circuit in the Eisen case. I think you would concede that the line of cases in Tam and Brunetti dealing with disparagement and immorality clauses were in the context of the Lanham Act. We are here on a limited public forum analysis. There is no mention or application of the plurality opinion and the passage you pull of, quote, giving offenses a viewpoint that has been connected to this particular forum. So my concern is the application. You're asking us to extend what the Sixth Circuit did in Eisen and what the Eastern District of Pennsylvania similarly did in the Marshall case. The Tam line of cases just doesn't even address or work within our limited public forum case law, as pointed out in Dyer and some other cases. So how would you have us apply it in this context? Tam and Brunetti stand for the proposition, as do cases in this court such as Otto, that giving offense is protected. The First Amendment is there to protect receiving an offense. This court is blocking in speech first. And a college candidate said a view here was referenced also in the Dyer case, which was a limited public forum school case. And so the problem is you would agree with me as pointed out that Dyer points out that the regulation here was not content-driven. The speech in Dyer was regulated because it was disruptive, because it broke some of the rules in the decorum. And in your example, you noted laudatory comments. My understanding is the record shows even laudatory comments were circumscribed. You couldn't go and make those comments to individual members, for example. You must go to the chair of the board. It seems that most of the regulations here are not focused in a way that would impact content. They're neutral or viewpoint neutral. As stated earlier, it's more about the nature of having organized meeting in a limited public forum, which our case law has said is permitted. It is permitted to limit the topic of debate in a limited public forum. Here, the defendants have not exactly done that. They've said in their brief that they allow discussion on all topics. This is on page 3 of their brief. Members of the public may sign up to speak at board meetings on any topic, regardless of their viewpoints. But once you are speaking about a topic, and we would agree that they can limit the topics to school-related topics, and I don't think there's a dispute that everything that's happened here in this case has been school-related, you cannot, then, in a limited public forum, censor the viewpoints. And if a viewpoint is deemed to be abusive or person-directed, those are viewpoints. Speech that is abusive conveys a particular viewpoint that other speech does not. Speech that uses certain words conveys a message that speech using two words would not convey. That's why the Sixth Circuit said in a limited public forum, we don't allow viewpoint discrimination, abusive prohibitions, person-directed speech prohibitions are viewpoint discrimination provisions, and those were struck down. Thank you. All right. Thank you, Mr. Gora. Ms. Bridges? Good morning, Your Honors. May it please the Court. Jennifer Bridges on behalf of Appalese. At the risk of stating the obvious, a school board meeting has the purpose of conducting school board business, and the school board has a legitimate and substantial governmental interest in conducting such business in an orderly and efficient fashion, as this Court has repeatedly recognized. BPS's public participation policy is designed to fulfill that purpose. It is reasonable in light of the purpose of the limited public forum of a school board meeting, and without it, the chair would be less efficient at avoiding disruptions. Now, the district court, Judge Dalton, reviewed many, many videos of school board meetings. He looked at the policy itself. He reviewed the affidavits of the parties, and he concluded that the appellants were not substantially likely to succeed in the merits of their claim because the policy is viewpoint neutral and, therefore, facially constitutional, and that it was applied even-handedly as a whole and is neither vague nor overbroad, and this Court should affirm. As the Court was discussing with Mr. Gora, the nature of the policy is that it does not discriminate based on viewpoint. Nowhere in the policy does it say that a commenter cannot make offensive views or offensive points, and Judge Wilson, you noted that the Moms for Liberty members spoke, I believe, 109 times, and only on the occasions that they were interrupted did they violate the policy. It was not because they had given a viewpoint that was offensive. In fact, these school board meetings frequently are— many, many people are coming up to give viewpoints that are going to offend one side of the audience or the other. These are emotionally charged issues. These are heated issues about mask mandates or transgender bathroom policies, and so they're going to be offensive to somebody in the audience, but as long as they are not made in a manner that is abusive or obscene or irrelevant or personally directed, they're not going to be interrupted for giving offense whenever they are expressing their viewpoints. The Court discussed Tam Brunetti very briefly, and yes, Judge Reeves, I agree with you. These are Lanham Act cases. They are an apposite to the limited public forum situation that we have here in a school board meeting, and in those cases, the Patent and Trademark Office was limiting trademarks because the public might find them offensive, but here that's not what we have. Here we have a restriction on the manner in which something is said. So to use an example, abusive and offensive are not the same thing. They're not synonymous. I think everybody can agree that racial discrimination is offensive to the vast majority of people who hear it, but if a person stands up in a school board meeting and, to use a somewhat uncomfortable example, says, I don't want my white child going to school with black children, that's offensive, and it's offensive to the vast majority of people, and it's probably considered even immoral by most people. But if somebody comes up and makes that same statement but does so using a racial epithet, that moves to abusive. They're the same viewpoint, they're expressing the same offensive point of view, but one falls into that abusive category and the other does not. As far as the as-applied challenge, the many hours of video show that the chair applied the policy in a way that is even-handed as a whole and that people, including Moms for Liberty members, frequently make statements that are going to be offensive to some subset of the population, but the chair does not have the benefit of leisurely aftersight, as the court noted in the Jones case, and so even if there is the occasional error by the chair, that does not amount to a constitutional tort. Nor does the law require the policy to be perfect, as the Ward v. Rock Against Racism case stated. It must only give a person of ordinary intelligence the information necessary to tell her what is and is not permissible, and I would argue that the policy certainly does that here. There also has not been actual fact demonstrated by the appellant showing that the policy could be used in a substantial number of instances to violate speech protections, and therefore they have not succeeded on their overbreadth claim. So in conclusion, unless I can answer any questions for the court, we would ask the court to affirm, based on the reasons stated in our brief and the reasons noted here today, this policy is a content-neutral and viewpoint-neutral restriction on the manner in which statements are made, and therefore the district court correctly found that its constitutional appellants failed to demonstrate a substantial likelihood of success on the merits of their claim, and the order below should be affirmed. May I answer any questions for the court? I see no questions. Thank you, Ms. Bridges. Thank you very much. Mr. Gura, you've reserved some time for rebuttal. Yes, Your Honors. The notion that the government may bar speech because it's, quote, abusive or, quote, that this is somehow a content-neutral, not just viewpoint-neutral, content-neutral time, place, and manner restriction is simply contrary to all precedent that relates to the time, place, and manner doctrine. As this Court has noted, and this is not controversial law, the relaxed scrutiny for regulations of the time, place, and manner of speech applies only to regulations that are justified without reference to the content of the regulated speech. First, the court has to consider whether, on its face, the regulation draws distinctions based on the message a speaker conveys. The restrictions here, abusive, personally directed, and, as applied, obscene, are decidedly not what the Supreme Court has related recently in the Reagan advertising case, agnostic as to content. You have to see what the words are to see what the message is to see if it's an abusive message or a personally directed message. So what are we reviewing now? We're reviewing the denial of your motion for a preliminary injunction. Correct. And you have to determine that the district judge abused his discretion in determining that there's no substantial likelihood of success on the merits of your appeal. Is that right? That's correct, and an error of law is an abuse of discretion, Your Honor. The district judge erred as a matter of law. So you're saying he erred as a matter of law? And, yes, it is erroneous to suggest that a prohibition on speech that's abusive is somehow a manner of regulation that the school district can't enforce terms that are this vague and overbroad to bar public speech at a political meeting. What is abusive? I mean, you know, we have, first of all, the Supreme Court has recognized that political speech often is abusive. They've used that term in the Watts case. But also, you know, we have a limited category of limited number of speech categories that are not protected. I don't think abusive speech qualifies as one of those categories. You must be able to express a viewpoint that some people might consider abusive, and what I consider abusive may be different than what your honors might consider abusive. This is something that's inherently depending on the viewpoints and the political biases and ideas that are in the head of the person enforcing the law. We have a lot of speech that, you know, may offend one person, may not offend another person. Nonetheless, the First Amendment, you know, enables the speaker to determine what words they will use. And as far as personally directed speech is concerned, Your Honors, speech that is personally directed is going to convey a different message than speech which is addressed somewhere else. In Eisen, for example, if we look at the facts of that case where there was a requirement that the board be addressed, the facts tell us that Billy Eisen turned his back to the board and faced the audience when he made his views. That direction of speech itself is a message. It has a certain content to it. It's up to the speaker to choose to deliver that message, and the First Amendment has to respect that choice. So we would respectfully ask Your Honors to reverse and review the case. Thank you. Thank you, counsel. Well, that completes our docket for this morning. This court will be in recess until 9 o'clock tomorrow morning. All rise.